(Slip Opinion)

# Effect of 2020 OLC Opinion on Possible Congressional Action Regarding Ratification of the Equal Rights Amendment

A 2020 opinion of the Office of Legal Counsel that addressed the legal status of the proposed Equal Rights Amendment is not an obstacle either to Congress's ability to act with respect to ratification of the ERA or to judicial consideration of questions regarding the constitutional status of the ERA.

January 26, 2022

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

In January 2020, in response to a request for advice from the National Archives and Records Administration, this Office issued an opinion that addressed the legal status of the proposed Equal Rights Amendment ("ERA"). *Ratification of the Equal Rights Amendment*, 44 Op. O.L.C. __ (Jan. 6, 2020) ("2020 OLC Opinion"). Congress imposed a seven-year deadline when it initially proposed the ERA in 1972. Our opinion concluded that Congress had constitutional authority to impose that deadline and that, because 38 states had not ratified the proposed amendment before that deadline's expiration, the ERA is not a part of the United States Constitution and the Archivist of the United States may not certify it as such. In Part III of the opinion, we further concluded that once Congress proposes an amendment to the states, Congress has no further role in the ratification process and therefore lacks authority to modify the original deadline.

You have informed us that some members of Congress, scholars, and advocates contend that it was inappropriate for the Office to include Part III of the 2020 OLC Opinion and, in addition, that the analysis in that Part is an obstacle to further congressional action concerning ratification of the ERA. You have asked us to clarify what effect Part III of the opinion should have on Congress's ability to act.

We do not believe that this Office acted inappropriately by reaching the issues addressed in Part III of the 2020 OLC Opinion. Moreover, nothing in the opinion stands as an obstacle to Congress's ability to act. *See, e.g.*, H.R.J. Res. 17, 117th Cong. (2021) (House passage in March 2021 of a joint resolution to remove the ERA's deadline). We think, however, that the issues addressed in Part III were closer and more difficult than the opinion suggested.

1

The relevant interpretive sources—such as constitutional text, structure, history, practice, and precedent—fail to provide clear guidance, and in fact pull in conflicting directions, on some issues related to ratification of the ERA. As this Office remarked in 1977, in the context of advising on the legality of a three-year extension of the original deadline, the "lack of authoritative judicial precedent or guidance from the language of the Constitution itself makes it difficult to conclude with certainty" where the constitutional lines lie in this area. Memorandum for Robert J. Lipshutz, Counsel to the President, from John M. Harmon, Assistant Attorney General, Office of Legal Counsel, *Re: Constitutionality of Extending the Time Period for Ratification of the Proposed Equal Rights Amendment* at 1 (Oct. 31, 1977). One sign of that uncertainty is that the 2020 OLC Opinion itself disagreed with the Office's prior position that Congress had authority in 1978 to extend the ERA deadline by three years. 44 Op. O.L.C. __, at *28–29, *33–36. The opinion also questioned OLC's earlier conclusion that efforts by states to rescind their previous ratifications were invalid, asserting that the question of whether to credit those rescissions is a difficult issue that would need to be addressed if Congress removed the ERA time limit and courts held that doing so was constitutional. *Id.* at *36–37.

Whether the ERA is part of the Constitution will be resolved not by an OLC opinion but by the courts and Congress. Indeed, the status of the ERA, including important questions about Congress's role in the amendment process, is the subject of ongoing litigation, with additional lawsuits almost certain to be filed shortly. One case filed against the Archivist by the three states that recently ratified the ERA after the deadline expired is currently pending in the D.C. Circuit, and the Department of Justice is defending the Archivist. *Virginia v. Ferriero* (No. 21-5096). OLC's ordinary practice is not to address the legality of government action that the Department of Justice is defending in litigation. The *Virginia* litigation and the other cases almost certain to follow illustrate that the 2020 OLC Opinion will not be the last word on the constitutional status of the ERA. In fact, the federal courts may soon determine or shed light upon several unsettled matters.

Moreover, the 2020 OLC Opinion does not preclude the House or the Senate from taking further action regarding ratification of the ERA. As a co-equal branch of government, Congress is entitled to take a different

view on these complex and unsettled questions. Throughout our history, Congress has deliberated on its own interpretation of the Article V process numerous times and taken actions on that basis. And the shape of any forthcoming congressional action might affect the ultimate assessment of the ERA's legal status.

For the foregoing reasons, the 2020 OLC Opinion is not an obstacle either to Congress's ability to act with respect to ratification of the ERA or to judicial consideration of the pertinent questions.

CHRISTOPHER H. SCHROEDER
*Assistant Attorney General*
*Office of Legal Counsel*